## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

NATIONWIDE LIFE AND ANNUITY
INSURANCE COMPANY,

     Plaintiff,

     vs.

EDMOND GOLDEN, Individually and as
Trustee of the Edward Barry Insurance Trust,
LEONARD FILIZZOLA AGUIAR, FJ
SMITH, INC.; JEFF RAILEY, and DOES 1
through 20, inclusive,

     Defendants.

Case No.: 2:12-cv-00213
Judge George C. Smith
Magistrate Judge Norah McCann King

---

## REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS EDMOND GOLDEN, FJ SMITH, INC., AND JEFF RAILEY

# TABLE OF CONTENTS
## AND LOC. R. 7.2(A)(3) SUMMARY

I.      **INTRODUCTION**...............................................................................................1

II.      **PLAINTIFF CONCEDES THAT GENERAL JURISDICTION DOES NOT EXIST AGAINST THE DEFENDANTS** ..........................................2

Plaintiff's Opposition fails to raise any arguments evidencing Defendants' "continuous and systematic" conduct within Ohio which would render them "amenable to suit in any lawsuit brought against" them in Ohio.

III.      **PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF PROOF TO DEMONSTRATE THAT SPECIFIC PERSONAL JURISDICTION SHOULD BE EXERCISED AGAINST THE DEFENDANTS** ................................3

*Welsh v. Gibbs,* 631 F.2d 436 (6th Cir. 1980), *cert. denied,* 450 U.S. 981 (1981)

*Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir.1974)

     A.      **Nationwide's Characterization Of Itself As A Passive Entity Solicited By California Defendants In Ohio Ignores Its Active Presence In California.** ........................................................................4

Plaintiff has active business dealings, substantial presence, and considerable marketing efforts in California. Its assertion that the Defendants, who were allegedly submitting documents and forms mandated by Nationwide and/or responding to information requested from Nationwide, somehow "reached out" to Ohio as opposed to the other way around is without support.

     B.      **The Exercise Of Jurisdiction Does Not Comport With Ohio's Long-Arm Statute, Otherwise, Every Insured On Every Insurance Contract Should Reasonably Expect To Travel To Ohio To Resolve Disputes.** .................................................................................5

Plaintiff's arguments rely upon a very liberal and unjustified broad interpretation of Ohio's long-arm statute as to what constitutes "transacting business" and a "tortious injury by an act outside this state" and upon cases that were decided upon significantly more substantial facts. If Plaintiff's arguments are adopted, it would subject *every insured* in any state, all assignees, and virtually anyone who had any role, however minor, in submitting an insurance application or supporting document to an Ohio insurance company to suit in Ohio.

*Escada Internatl., Inc. v. Eurocargo Express,* No. 80761, 2002 WL 1821946 (Ohio App. August 8, 2002)

*Kroger Co. v. Malease Foods Corp.,* 437 F.3d 506 (6th Cir. 2006)

     1.      **The Ohio Supreme Court has Circumscribed the Breadth of the Ohio Long-Arm Statute.** ...........................................9

Although the Plaintiff advocates an extremely broad application of Ohio's long-arm

statute, such a broad interpretation is not justified.

*Kroger Co. v. Malease Foods Corp., supra*, at 513-514

**C.**    **The Exercise Of Personal Jurisdiction Does Not Comport With Constitutional Due Process Requirements. ................................................10**

    **1.**    **Defendant's Attenuated Contacts do not Establish Purposeful Availment.........................................................................................10**

*Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110 (6th Cir. 1994)

        **a.**    **Courts have Repeatedly Found that the Purchase of an Insurance Policy is Insufficient to Establish Personal Jurisdiction. ...........................................................................12**

*Nationwide* purposefully availed *itself* of the privileges of doing business in California, not vice-versa. Indeed, in facts similar to those presented here, the courts have repeatedly found <u>against</u> the exercise of personal jurisdiction by an insurer against an out-of-state insured because of this identical circumstance.

*Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389 (7th Cir. 1994)

*Capitol Indem. Corp. v. Certain Lloyds Underwriters and/or London Companies*, 487 F.Supp. 1115 (W.D. Wis. 1980)

        **b.**    **Plaintiff's Allegation that it Sustained Damages in Ohio is Immaterial to Whether or Not Personal Jurisdiction Should be Exercised Over Defendant..............15**

The Sixth Circuit has previously explained that the "*locus*" of "a monetary injury is immaterial, as long as the obligation did not arise from 'a privilege the defendant exercised in (the forum state).'"

*LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989)

    **2.**    **Because Plaintiff has Not Established the Purposeful Availment Prong under *Southern Machine*, Plaintiff Cannot Establish the Remaining Prongs.......................................17**

Adopting Plaintiff's position here would render every insured subject to suit by its out-of-state insurer on the basis of sending applications for insurance, correspondence with insurer, and premium payments to insurer's out-of-state address. Defendants here had no role in negotiating the insurance policy, did not dictate contract terms, or otherwise depart from their "passive buyer role." They merely acted in accordance with the procedures required and established by Nationwide. Defendants here are in decidedly different positions from defendants against whom personal jurisdiction were applied.

**IV.**    <u>**VENUE IS IMPROPER IN OHIO WHEN THE SUBSTANTIAL PART OF THE EVENTS TOOK PLACE IN CALIFORNIA AND A MAJORITY OF THE DEFENDANTS RESIDE THERE**</u> ..................................................................**18**

The only basis for establishing proper venue in Ohio is if a "substantial part of the events or omissions giving rise to the claim occurred there." *See* 28 U.S.C. §1391. Contrary to the

Plaintiff's allegations, the *substantial* part of the events occurred in California, *not* Ohio.

**V.    CALIFORNIA, NOT OHIO, IS THE MORE CONVENIENT FORUM FOR TRIAL OF THIS MATTER** .......................................................................**18**

    **A.    California Is More Than Acceptable As An Alternative Forum For Nationwide To Pursue Its Claims.** ................................................**19**

    **B.    Nationwide's Choice Of Forum Should Be Afforded *Less Deference* Since The Operative Facts Giving Rise To Its Claims Occurred In California.** .......................................................................**19**

Where operative facts giving rise to the action occur outside of the forum, the deference given to the plaintiff's choice of forum may be reduced.

*Hardy v. Fernandez*, No. 09-1230, 2009 WL 2518211 (E.D. Pa. 2009)

    **C.    The Private Interest Factors All Weigh In Favor Of Dismissal Or Transfer.** .......................................................................**20**

*Jamhour v. Scottsdale Insurance Co.*, 211 F.Supp.2d 941(S.D. Ohio 2002)

    **D.    The Public Interest Factors All Weigh In Favor Of Dismissal Or Transfer.** .......................................................................**21**

*Mead Corporation v. Oscar J. Boldt Construction Company*, 508 F.Supp. 193 (S.D. Ohio 1981)

**VI.    OHIO STRONGLY ENFORCES CHOICE-OF-LAW PROVISIONS IN AGREEMENTS PURSUANT TO THE RESTATEMENT (SECOND) § 187** .....**22**

Nationwide drafted the subject insurance policy, issued it in California to a California resident to be performed in California, and elected to include a choice-of-law provision selecting California law to govern the rights and obligations of the parties to the insurance contract.

*Ranpak Corp v. Lopez*, No. 1:08CV0042, 2008 WL 3822129 (N.D. Ohio, August 12, 2008)

*Tele-Save Merchandising Co. v. Consumers Distributing Co. Ltd.*, 814 F.2d 1120 (6th Cir. 1987)

    **A.    The Ohio Supreme Court Would Unequivocally Enforce Nationwide's California Choice-of-Law Election.** ................................................**24**

*Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Company*, 6 Ohio St.3d 436 (1983)

    **B.    Neither Exception to the Restatement § 187 Applies to the Choice-of-Law Analysis Here Under the Ohio Supreme Court Choice-of-Law Analysis.** .**26**

**VII.    § 188 OF THE RESTATEMENT (SECOND) ONLY APPLIES WHEN NO CHOICE OF LAW HAS BEEN DESIGNATED** ....................................................**27**

Nationwide cites only Ohio law under the Restatement as it applies when no choice-of-law provision has been inserted in a contract pursuant to § 188, stating in that circumstance that, "The Restatement generally directs courts to apply the substantive law of the state with the most

sufficient contacts to the claim." However, it is only where a choice of law is not designated that under Ohio law, § 188 of the Restatement (Second) Conflict of Laws controls and instructs that the rights and duties of the parties to the contract are to be determined by the law of the state that has "the most significant relationship to the transaction and the parties."

**VIII.  EVEN WHERE NO CHOICE OF LAW HAS BEEN DESIGNATED, OHIO LAW MANDATES THAT CALIFORNIA LAW BE APPLIED UNDER THESES FACTS**.........................................................................................28

*Gries Sports Ent., Inc. v. Modell*, 15 Ohio St.3d 284 (1984)

*Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St. 3d 474, 2001-Ohio-100

**A.      The Ohio Supreme Court Has Already Determined That the Law of the State of Issuance Governs Insurance Policies in The Absence Of Choice Of Law**.............................................................................................30

*Nationwide Mutual Ins. Co. v. Ferrin*, 21 Ohio St.3d 43 (1986)

**IX.  NATIONWIDE'S ATTEMPT TO STRIP THE POLICY OF ITS CHOICE-OF-LAW PROVISION BASED UPON FRAUD BEGS THE CHOICE-OF-LAW ISSUE**............................................................................31

According to the policy and pursuant to Ohio Law, it is California law regardless of whether the choice-of-law provision is considered.

**X.  PLAINTIFF'S FRAUD CLAIMS ARE GOVERNED BY THE CONTRACTUAL INCONTESTABILITY PROVISION AND THEREFORE ARE RELATED TO THE CONTRACT AND SUBJECT TO THE CHOICE-OF-LAW PROVISION**..........................................................................32

*Victoria v. Superior Court*, 67 Cal.App.4th 779 (1998)

*Lawrence v. Walzer & Gabrielson*, 207 Cal.App.3d 1501 (1989)

**A.      The Choice-Of-Law Provision Encompasses Tort Actions.**.........................33

Nationwide's attempt to dichotomize the choice-of-law provision between tort and contract is also not supported under California law under these facts.

*Nedloyd B. V. v. Superior Court*, 3 Cal.4th 459 (1992)

*Moses v. Business Card Express, Inc.*, 929 F.2d 1131 (6th Cir. 1991).

**XI.  NATIONWIDE'S ALLEGATION THAT THE BARRY POLICY LACKED AN INSURABLE INTEREST IS DIRECTLY CONTRARY TO BLACK LETTER CALIFORNIA LAW**............................................................34

*Lincoln National Life Insurance Co. v. Fishman*, 638 F.Supp.2d 1170 (C.D. CA 2009)

**XII.  THE *BERCK* CASE IS THE ONLY DECISION WHICH PREVIEWS HOW CALIFORNIA WOULD APPLY ITS OWN LAW TO THIS CASE AND AFFIRMED THE HOLDING IN *FISHMAN***.........................................................39

*The Lincoln Life and Annuity Company of New York v. Jonathan Berck*, No. D056373, 2011 WL 1878855 (Cal. App. May 17, 2011)

XIII. CALIFORNIA'S RECENT AMENDMENTS TO *INSURANCE CODE* SECTION 11010.1 ARE NOT RETROACTIVE UNDER CALIFORNIA LAW .............................................................................................................41

    A.    The *PHL Variable* Order Improperly Applies 2010 Amendments To The California *Insurance Code* Retroactively And Was Not Subject To Incontestability. ......................................................................................42

Nationwide cites the order in the pending matter of *PHL Variable Insurance Co. v. Howard Abrams, et al.*, which was an interlocutory decision by the federal district court for the Southern District of California denying a motion to dismiss. A key distinction, however, was that unlike this case, the two-year incontestability provision for the PHL policy had not yet expired when challenged, thus allowing the carrier to rescind or void the policy based upon allegations of fraud regardless as to whether an insurable interest existed.

XIV. NATIONWIDE'S CIRCULAR ARGUMENT CONCERNING THE SURVIVAL OF ITS TORT CLAIMS IS LOGICALLY INCOHERENT............44

    A.    The Bar Of Incontestability In California Is Beyond Dispute....................45

    *United Fidelity Life Ins. Co. v. Emert*, 49 Cal.App.4th 491 (1996)

    *AMEX Life Ins. Co. v. Superior Court*, 14 Cal.4th 1231 (1997)

XV. CONCLUSION .............................................................................................................46

## REPLY MEMORANDUM

### I.  INTRODUCTION

Much like their Complaint, Plaintiff Nationwide Life and Annuity Insurance Company's ("Plaintiff" or "Nationwide") Opposition to Defendants Edmond Golden's ("Golden"), FJ Smith, Inc.'s ("FJS"), and Jeff Railey's ("Railey") (collectively, "Defendants") Motion to Dismiss makes great rhetorical efforts to inflate the purported quantity of the Defendants' contacts with Ohio with the aim of justifying the exercise of personal jurisdiction over individuals who lack sufficient *minimum contacts* with this state.  Plaintiff repeatedly recites, in detail, *each form* purportedly submitted to Nationwide by the Defendants, along with communications that it initiated and documents which it required to be submitted.

Conspicuously absent from these tailored and selective facts is the incontrovertible reality of Nationwide's concerted and substantial activities directed at California residents in order to do business in California's lucrative insurance market and Nationwide's massive presence in that state.  Nationwide is licensed to do business in California with over 200 licensed agents in 44 cities in California.  Both the California Department of Insurance records *and Nationwide's own website* reveals that Nationwide engages in considerable ongoing business activities inside California to solicit customers to purchase its insurance policies, which policies are issued in California, are governed by California law, and are performed in that state.  Moreover, Nationwide engages in substantial marketing efforts in California.  Plaintiff's slogan "Nationwide is on your side" appears in television commercials and print ads throughout the State of California.

Such facts are directly contrary to Plaintiff's attempt to portray itself as a passive Ohio business, waiting in Ohio to be approached by the California Defendants.  As with all insurance policies, Plaintiff has exclusive control over the policy's terms, what information needs to be

1

submitted to it, what forms need to be filled out, and whether or not to issue a policy. It is important to note that Plaintiff provides the applicants with the specific forms and documents it requires and Plaintiff issues the policy, for which it dictates non-negotiable terms.

Plaintiff's Opposition argues for an unjustifiably broad application of the Ohio long-arm statute and constitutional due process requirements in an effort to support its assertion of personal jurisdiction on the barest of contacts. In truth, Defendants simply do not have the minimum contacts in Ohio sufficient to warrant the exercise of personal jurisdiction over them. In addition, regardless of whether this case remains in Ohio, is dismissed, or is transferred, there can be no doubt that California state law governs the dispute. The Ohio Supreme Court has made it abundantly clear that pursuant to the Restatement (Second) Conflict of Laws, absent the most compelling and repugnant circumstances, the choice of law agreed to by the parties shall be honored in Ohio. That Court has also determined that, with respect to those circumstances where no choice-of-law provision applies, the state where an insurance policy is issued and where the subject matter of the policy exists determines the law to be applied – not the headquarters of the insurance company.

Finally, although California law is still developing its approach to these viatical cases, it is clear that the law applicable to Nationwide's policy mandates payment by Nationwide and bars Nationwide's untimely collateral attacks on enforceability of its policy as a matter of law.

## II. PLAINTIFF CONCEDES THAT GENERAL JURISDICTION DOES NOT EXIST AGAINST THE DEFENDANTS

Plaintiff's Opposition fails to raise any arguments evidencing Defendants' "continuous and systematic" conduct within Ohio which would render them "amenable to suit in any lawsuit brought against" them in Ohio, *i.e.* allegations supporting *general jurisdiction* against the Defendants. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-416, 104

2

S.Ct. 1868 (1984) (holding that general jurisdiction is only proper where the defendant is domiciled in the forum state or has contacts which are substantial, continuous, and systematic). Accordingly, Plaintiff has therefore conceded that general jurisdiction does not exist here and the inquiry therefore turns on whether or not the exercise of specific personal jurisdiction is warranted.

### III. PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF PROOF TO DEMONSTRATE THAT SPECIFIC PERSONAL JURISDICTION SHOULD BE EXERCISED AGAINST THE DEFENDANTS

As previously set forth, "[t]he exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements." *Microsys Computing, Inc. v. Dynamic Data Systems, LLC*, No. 4:05 CV 2205, 2006 WL 2225821, at *4 (N.D. Ohio, Aug. 2, 2006) citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). "The burden of establishing jurisdiction is on the plaintiff." *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir. 1980), *cert. denied,* 450 U.S. 981 (1981). Moreover, where defendants, like those in this action, have supported its Rule 12(b)(2) motion to dismiss, "by affidavit or otherwise," plaintiff, too, "must set forth specific facts showing that the court has jurisdiction." *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir.1974); *see also Baltimore and Ohio R. Co. v. Mobile Tank Car Services,* 673 F.Supp. 1436, 1439 (N.D. Ohio 1987) (finding that plaintiff failed to meet its burden to establish the requisite minimum contacts in Ohio where, when defendant submitted sworn affidavits, plaintiff relied upon bare allegations of jurisdiction and failed to produce any evidence via counter-affidavits or any other proof).

Here, it would be improper to exercise jurisdiction over the Defendants when Plaintiff has failed to meet its burden to produce evidence demonstrating that the exercise of personal

jurisdiction is valid under either the Ohio long-arm statute and, more importantly, pursuant to the constitutional due process requirements.

### A. Nationwide's Characterization Of Itself As A Passive Entity Solicited By California Defendants In Ohio Ignores Its Active Presence In California.

Plaintiff insists that Defendants somehow actively solicited Plaintiff's business in Ohio, intimating that Plaintiff was merely a passive business, sitting in Ohio, receiving overtures by Defendants to induce them into doing substantial, ongoing business with the out-of-state Defendants. In making this argument, however, Plaintiff ignores the reality of its own active business dealings, substantial presence, and considerable marketing efforts in California. Plaintiff's own website details the extensive business it conducts in California; Nationwide has over 200 associates in California (as of March 2011) (Ex. 3), has offices in at least 44 cities in California (Ex. 4), and has almost 20% (28 companies) of its 145 associated companies in California (Exs. 5 and 6). Moreover, according to the 2011 California Property and Casualty Market Share Report (of licensed insurers) published by the California Department of Insurance, Plaintiff is the 11th largest group of insurers in California (Ex. 7).

In support of its argument regarding the existence of Defendants' minimum contacts in Ohio, Plaintiff lists out *each document* Defendants allegedly submitted to it. Specifically Plaintiff argues that: (1) Golden signed and submitted the Application and Financial Supplement which had Nationwide's return address in Ohio and that Railey somehow "assisted" in their submission; (2) Golden signed the Amendment and Policy Receipt which were returned to Nationwide in Ohio; (3) Golden and FJS submitted premium payments to Nationwide; and (4) Golden and FJS signed the change of ownership and beneficiary forms containing Nationwide's Ohio address. In doing so, Plaintiff attempts to bulk up the *quantity* of interactions Defendants had with it because it cannot ignore that the *quality* of such interactions is grossly insufficient to

4

warrant the exercise of personal jurisdiction over it in Ohio.

Nationwide is a national insurance company which expends millions of dollars annually in California to solicit insurance business from that state, for which it is rewarded with millions of dollars in premium payments through its vast network of authorized California insurance agents in the highly-regulated California insurance industry. Its assertion that the Defendants, who were allegedly submitting documents and forms mandated by Nationwide and/or responding to information requested from Nationwide, somehow "reached out" to Ohio as opposed to the other way around is without support.

**B.     The Exercise Of Jurisdiction Does Not Comport With Ohio's Long-Arm Statute, Otherwise, Every Insured On Every Insurance Contract Should Reasonably Expect To Travel To Ohio To Resolve Disputes.**

Here, Plaintiff insists that the exercise of personal jurisdiction over the Defendants is somehow warranted pursuant to Ohio's long-arm statute, which permits a court to exercise personal jurisdiction over a person as to a cause of action arising from the person's "[t]ransacting any business in this state" and "[c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." (*See* Plaintiff's Opposition at pp. 10-18 relying on Ohio Rev. Code §§ 2307.382(A)(1) and (6).)

However, Plaintiff's arguments rely upon a very liberal and unjustified broad interpretation of Ohio's long-arm statute as to what constitutes "transacting business" and a "tortious injury by an act outside this state" and upon cases that were decided upon significantly more substantial facts. **If Plaintiff's arguments are adopted, it would subject *every insured* in any state, all assignees, and virtually anyone who had any role, however minor, in submitting an insurance application or supporting document to an Ohio insurance**

**company to suit in Ohio.**

All of the cases upon which the Plaintiff relies concern business dealings and contracts

which are distinctly more significant than those that exist in the present case because those cases

involve facts where the out-of-state defendants *initiated the contact* with the Ohio entity,

*engaged in active negotiations* of the terms of the contract or business dealings that required

continuing, ongoing, and future conduct and activities with consequences *in Ohio.* Specifically:

- *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 559 N.E. 2d 477 (1990) involved the careful negotiation of a *10-year lease with an Ohio lessor* which required the lessor's approval for future conduct and activities.

- *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.*, 82 Ohio App.3d 369, 374-75, 612 N.E.2d 472, 475-76 (1992) involved a suit by an Ohio manufacturer against a California buyer regarding goods to be manufactured in Ohio to the buyer's exact specifications creating ongoing duties and obligations for the life of the contract. There, the court found compelling the facts that the buyer initiated the contact, negotiated the contract terms, and traveled to Ohio to ensure that his specifications were met.

- *Ucker v. Taylor*, 72 Ohio App.3d 777, 596 N.E.2d 507 (1991) involved a suit against an attorney who actually conducted a deposition in Ohio.

- *Nationwide Life Ins. Co. v. Koresko*, No. 2:05cv1066, 2007 WL 2713783, at *2 (S.D. Ohio Sept. 14, 2007) involved an out-of-state defendant's intentional solicitation of Nationwide to purchase its patented defined-benefit insurance system where the key fact was that the defendants initiated the bulk of the contacts, which included the out-of-state defendant's engaging in numerous phone calls and repeated visits to Ohio to make sales presentations.

- *Wright International Express, Inc. v. Roger Dean Chevrolet, Inc.*, 689 F.Supp. 788, 791-792 (S.D. Ohio 1988) involved the defendant's *active participation* in negotiations for plaintiff's business over a 45-day period, entering into a contract with an Ohio resident for the lease of a Learjet to be based in Ohio, and where the contract contemplated future consequences to occur in Ohio, which is where the jet was located, would be maintained (including recordkeeping), and if defendant's defaulted would be where the jet would be foreclosed upon and repossessed.

- *Walker v. Concoby*, 79 F.Supp.2d 827, 831 (N.D. Ohio 1999) involved the defendants' negotiation, distribution, and authorship of the accused report and defendants were physically present in Ohio during negotiations, which weighed

6

strongly in favor of personal jurisdiction and distribution and authorship agreements created ongoing duties and obligations and allegedly infringing materials were disseminated in Ohio.

- *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012) involved a suit by an Ohio resident against a Utah attorney who initiated, wrote, and signed letters to a client's investors (many of whom were located in Ohio), made false representations regarding the client's integrity, honesty, and efforts and actions to recoup the investor's funds from a third party, and *specifically* requested documentation and information from the investors which the Ohio resident subsequently provided.

- *Ashton Part Apartments, Ltd. v. Lebor*, 252 F.Supp.2d 539 (N.D. Ohio 2003) involved the financing of a contract for the construction of a residential building project development located *in Ohio* and where the defendant (who was both the owner of the financier company and its attorney) repeatedly communicated and reassured the plaintiff of the financier company's ability to fulfill their commitment to provide financing, thereby having an intimate role in the communications with plaintiff.

- *Kehoe Component Sales, Inc. v. Best Lighting Products, Inc.*, No. 2:08-cv-752, 2009 WL 2591757 (S.D. Ohio August 19, 2009) involved claims of tortious interference with contractual relations, misappropriation of trade secrets, fraud, and conversion based upon promises and representations made by an officer of the corporation. The key facts weighing in favor of jurisdiction in that case were that there was a 10-year business relationship between the companies, the corporate officer made numerous trips to Ohio where he made representations in Ohio inducing the plaintiff to contract with the corporation, and that each action by the corporate officer demonstrated that he "induced, negotiated and signed the agreement in Ohio." Moreover, the defendant obtained confidential information while in Ohio and thereafter used that information to the Ohio company's detriment.

- *Herbruck v. La Jolla Capital*, No. 19586, 2000 WL 1420282 (Ohio App. September 27, 2000), involving claims for conversion, fraud, and civil conspiracy regarding the sale stock of an Ohio corporation outside of Ohio.

By stark contrast, the minimal facts present in this action do not justify the application of personal jurisdiction under Ohio's long-arm statute as they do not involve the Defendants' initiation of the contacts, active negotiations with respect to the contract terms, or continuing, ongoing, and future conduct, consequences and activities to take place in Ohio. Here, a consumer insurance policy – a product – was offered for purchase in California, not Ohio, and

was initiated by Nationwide's concerted marketing and business efforts to solicit the purchase of its policies from California residents. The application and other documents referenced by Plaintiff were forms provided by it to California applicants using California agents, were filled out and executed by Defendants in California, and resulted in the purchase of a California insurance policy by a California insured for the payment of the policy benefits to a California beneficiary in the event of the insured's death. Unlike the cases relied upon by Plaintiff, the business relationship here was, at best, a single transaction that did not require substantial continuing obligations in Ohio, did not involve significant negotiations in Ohio (or any at all since Nationwide dictated all terms of the policy), did not involve the execution of the documents in Ohio, did not involve the Defendants traveling to Ohio, did not involve making repeated representations and promises in Ohio, nor did it involve an Ohio policy. In fact, the policy at issue was a California policy governed by California law and such a choice-of-law provision weighs against the exercise of Ohio personal jurisdiction. *See Matrix Essentials, Inc. v. Harmon Stores, Inc.,* 205 F.Supp.2d 779, 789 (N.D. Ohio 2001) citing *Burger King Corp. v. Rudzewick*, 471 U.S. 462, 482, 105 S.Ct. 2174, 2186 (1985) ("Matrix's argument that choice of law provisions weigh in favor of jurisdiction in a particular state is correct.").

To adopt Plaintiff's rationale would be to subject the Defendants to suit in Ohio based upon the unilateral activity of the Plaintiff who happened to be headquartered in Ohio but was purposefully soliciting business from California residents to obtain policies (which would eventually be issued in California) whose terms were not negotiable, who mandated the submission of specific forms and documents, and in which the policy benefits were to be paid out in California. That Defendants sent a few documents or forms provided to them by Nationwide and executed by them in California to procure a California insurance policy does not

establish a meaningful connection with Ohio to make the exercise of jurisdiction reasonable. *See Escada Internatl., Inc. v. Eurocargo Express,* No. 80761, 2002 WL 1821946, *5-6 (Ohio App. August 8, 2002) (finding that the fact that defendant engaged plaintiff's services and paid plaintiff regarding business dealings that amounted to at best an "occasional arrangement" was insufficient to warrant the exercise of personal jurisdiction).

Here, Defendants' contacts with Ohio result solely from decisions made by the Plaintiff, who offered their policy for purchase in California and required Defendants to submit specific required forms and documents to them and cannot be considered to constitute "actions freely and intentionally undertaken by the defendant[s]." *See Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 513 (6th Cir. 2006), citing *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 382-83 (6th Cir. 1968).

### 1. The Ohio Supreme Court has Circumscribed the Breadth of the Ohio Long-Arm Statute.

Although the Plaintiff advocates an extremely broad application of Ohio's long-arm statute, such a broad interpretation as applied in *Kentucky Oaks*, *Wright* and other cases relied upon by the Plaintiff are no longer justified. In the case of *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n. 1 (1994), the Ohio Supreme Court ruled that Ohio's long-arm statute did not reach the limits of the Due Process Clause. Accordingly, the court in *Kroger Co. v. Malease Foods Corp.* has indicated that the broad application of Ohio's long-arm statute as applied in *Kentucky Oaks* and *Wright*, actually "militate[d] in favor of an even narrower application of the holding in *Kentucky Oaks*. *See Kroger*, *supra*, at 513-514 (also noting that the decisions reached in *Wright* (*supra*, 689 F.Supp.788) and *In-Flight Devices Corp. v. Van Dusen Air, Inc.* (466 F.2d 220, 224 (6th Cir.1972)), were reached prior to the *Goldstein* decision.).

Therefore, the overly broad application of Ohio's long-arm statute that is advocated by

the Plaintiff is inappropriate in light of the Ohio Supreme Court's limitation of the long-arm statute's application, especially in cases such as the present where the facts presented are tenuous and lack meaningful interaction with the forum state sufficient to support the exercise of personal jurisdiction.

**C.      The Exercise Of Personal Jurisdiction Does Not Comport With Constitutional Due Process Requirements.**

Even if Ohio's long-arm statute can be deemed to convey personal jurisdiction over the Defendants, Plaintiff cannot meet its burden to demonstrate the requirement that the exercise of personal jurisdiction here comports with constitutional due process requirements, *i.e.* that Defendants have sufficient minimum contacts with the State of Ohio with respect to this single transaction, rendering it reasonable that Defendants would be haled into litigating a case in an Ohio forum.  Plaintiff may have tried to re-frame the facts by portraying Defendants as the *soliciting parties* (Plaintiff's Opposition, pp. 14-18), but Plaintiff's own website, conduct, and the California Department of Insurance's records belie such allegations and reveal that the exact opposite is true as they demonstrate that Plaintiff has substantial business dealings and undertook significant marketing efforts in the State of California to take advantage of the California market and to solicit the purchase of its policy in California.

Plaintiffs cannot meet the Sixth Circuit's three-part test established in *Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968) for exercising personal jurisdiction as a result of a single act.

**1.      Defendant's Attenuated Contacts do not Establish Purposeful Availment.**

The critical failure existing here is the Plaintiff's inability to establish purposeful availment in Ohio.  In order "to determine whether a party purposefully availed itself of a forum,

a court must evaluate '*prior negotiations and contemplated future consequences*, along with the terms of the contract and the parties' actual course of dealing....'" *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1118 (6th Cir. 1994), citing *Burger King Corp. v. Rudzewick*, 471 U.S. 462, 479, 105 S.Ct. 2174, 2185 (1985). It is the "quality" of the contacts that determines whether they amount to purposeful availment. *Reynolds*, *supra; see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (where in finding purposeful availment by the defendant, the court found that "Patterson's contacts with CompuServe…were deliberate and repeated….").

    As set forth *supra* and in Defendants' original moving papers, the "quality" of the contacts existing here are too attenuated to establish purposeful availment by Defendants under *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.,* 91 F.3d 790, 793 (6th Cir. 1996). Plaintiff's arbitrary attempt to distinguish *Nationwide v. Tryg* by limiting its holding to cases involving foreign (non-U.S.) corporations is not justified. The court in *Nationwide v. Tryg* never limited its holding to such a context and the majority of the negative applications concerned the Court's holding that Ohio's *long-arm statute* is co-extensive with due process thereby incorporating general jurisdiction. *See Cole v. Miletti,* 133 F.3d 433, 436 (6th Cir.1998) (*citing Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n. 1 (Ohio 1994) (*per curiam*) for the proposition that the Ohio Supreme Court has ruled that the Ohio long-arm statute <u>does not</u> extend to the constitutional limits of the Due Process Clause and, therefore, the "central inquiry" is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice."); *see also, Projects Unlimited, Inc. v. All Tech Electronics, Inc.*, No. 3:09-CV-284, 2010 WL 299156 (S.D. Ohio, Jan. 21, 2010) (recognizing the overruling pursuant to the *Goldstein* decision.).

Irrespective of the fact that the defendant in *Nationwide v. Tryg* was a foreign corporation, the rationale against exercising personal jurisdiction against defendants where only minimal and tenuous contacts exists, remains good law. *See e.g., Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 482 (6th Cir. 2003) (relying upon *Nationwide v. Tryg* for its analysis that "the Court focuses on the actions of the defendant in the negotiation and performance of the contract to determine whether it should be subject to suit in the forum state."); *see also Calphalon Corp. v. Rowlette,* 228 F.3d 718, 722-23 (6th Cir. 2000) (relying upon *Nationwide v. Tryg* in its analysis that "the mere existence of a contract between Rowlette and an Ohio citizen" is insufficient to confer personal jurisdiction over defendant where the agreement, the parties' "actual course of dealings" demonstrated that the defendant's contacts were purely "fortuitous" and "attenuated" of the type that the "purposeful availment requirement is meant to prevent from causing jurisdiction.").

> a.   **Courts have Repeatedly Found that the Purchase of an Insurance Policy is Insufficient to Establish Personal Jurisdiction.**

The "quality" of the facts established by Plaintiff here actually establishes that *Nationwide* purposefully availed *itself* of the privileges of doing business in California, not vice-versa. Indeed, in facts similar to those presented here, the courts have repeatedly found <u>against</u> the exercise of personal jurisdiction by an insurer against an out-of-state insured because of this identical circumstance. *See Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 395 (7th Cir. 1994); *see also Capitol Indem. Corp. v. Certain Lloyds Underwriters and/or London Companies,* 487 F.Supp. 1115, 1121 (W.D. Wis. 1980) ("One who merely purchases insurance from an insurer residing in the forum state does not, by the purchase through an intermediary, subject himself to the jurisdiction of the courts in the insurer's state.")

In *Capitol Indem. Corp.*, the court found that jurisdiction did not exist over the out-of-state insured and went even further by explaining that the protection by the sovereign state was less obligatory in circumstances where the plaintiff is the seller of insurance and a large corporation as opposed to an individual purchaser of insurance (such as the plaintiff in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 200-01, 2 L.Ed.2d 223 (1957)). *See Capitol Indem. Corp.*, *supra*, at 1121.

In *Federated*, the court found that with the exception of one general manager, none of defendant's officers, directors, or employees ever set foot in Wisconsin in connection with the insurance policies with plaintiff and that, "[t]here is only the most tenuous of links between Defendant and Wisconsin through Defendant's purchase of Plaintiff's stock and Defendant's backing of WPPSS bonds, some of which were purchased by Wisconsin residents." *Id.* at 394. In reaching its conclusion, the court found significant "that the contact arose in the Pacific Northwest and led to plaintiff's establishing a business presence in the state of Washington. In effect, the result of defendant's alleged solicitation was that plaintiff availed itself of the privilege of conducting business in the state of Washington rather than defendant or the manager availing itself of the same privilege in the state of Wisconsin (the forum state)." *Id.*

The plaintiff in *Federated* relied upon the following contacts: "(1) Defendant acquired Plaintiff's stock, as was their option under the policies, during the period that Plaintiff was located in Wisconsin, (2) Defendants sent premium payments to Wisconsin between 1977 and September 1982 when Plaintiff moved its headquarters to Kansas, (3) Defendant backed the sale of WPPSS bonds, some of which were sold to Wisconsin residents, (4) Defendant communicated with Plaintiff's Wisconsin office by phone and by mail, and (5) while in the Pacific Northwest, Defendant's general manager met the Plaintiff's president and encouraged him to apply for a

13

license to sell insurance in the state of Washington." *Id.* at 395. Considering these, [d]espite the significance Plaintiff attache[d] to these contacts," the court held that such contacts were "not sufficient to support the assertion of personal jurisdiction over Defendant consistent with due process." *Id.* The court found instead that although defendant had purchased insurance from plaintiff, defendant was not licensed to do business in Wisconsin, it had no officers or directors in Wisconsin, it did not own property in Wisconsin, never even solicited any business in Wisconsin, and noted that all of defendant's insurance contracts with plaintiff were executed in the Pacific Northwest, either at defendant's own offices or at the office of plaintiff's local representative in the Pacific Northwest. *Id.* at 391.

Moreover, the court in *Federated* went on to explain that, "**[s]everal courts have held that making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction.**" *Id.* (emphasis added) citing *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596, 604 (7th Cir. 1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). The court further expounded that "the purchase of goods or insurance from the forum state alone is an insufficient foundation upon which to assert personal jurisdiction." *Id.* citing *Lakeside,* 597 F.2d at 604 (mailing of purchase order to forum state) and *Capitol Indem. Corp.*, *supra*, at 1121 (purchaser of insurance policy).

Like the plaintiffs in *Federated* and *Capitol Indem. Corp.*, it was Nationwide who purposefully directed its business dealings and marketing efforts to sell its insurance policies in California. At best, Plaintiff has alleged that Defendant submitted a few documents to Nationwide by either mailing them to Ohio or the forms (which were Nationwide's own forms) merely stated Nationwide's Ohio address, responded to requests for information from Nationwide, and paid premiums to Nationwide in Ohio. Although Plaintiff attempts to

14

characterize this conduct as being part of an investment or STOLI scheme and conspiracy to defraud Plaintiff, Plaintiff has failed to plead any facts, because it cannot do so, that support the allegation that the Defendants "reached out" to Nationwide to solicit its business. Plaintiff has pled no facts that the documents were executed in Ohio; that Defendants engaged in significant negotiations with Nationwide regarding the terms of Barry's insurance policy; and that there was to be a continuing relationship, obligations, and consequences in Ohio. Although the premium payments were to be sent to Ohio, the policy was issued in California and, in the event of the Barry's death, its benefits were to be distributed in California.

> **b.    Plaintiff's Allegation that it Sustained Damages in Ohio is Immaterial to Whether or Not Personal Jurisdiction Should be Exercised Over Defendant.**

Plaintiff heavily emphasizes that the damages it sustained are suffered in Ohio. However, the Sixth Circuit has previously explained that the *"locus"* of "a monetary injury is immaterial, as long as the obligation did not arise from 'a privilege the defendant exercised in (the forum state).'" *See LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1302-03 (6th Cir. 1989) citing *Hanson v. Denckla*, 357 U.S. 235, 252, 78 S.Ct. 1228, 1239 (1958); *see also Calphalon Corp. v. Rowlette, supra*, 228 F.3d at 722-23 quoting *LAK,* 885 F.2d at 1303 ("Further, we held that any negative economic effect on the in-state plaintiff-seller did not create a determinative impact on the state economy, as 'the locus of such a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state.'"

In *LAK, Inc.*, the court was presented with a dispute regarding a contract for the sale of property located in Florida. The court held that the defendant in that case did not "reach out" to Michigan for the purpose of creating "continuing relationships and obligations" with any citizen

15

of that state. *LAK, Inc.*, *supra*, at 1300. There, the court found compelling the fact that the out-of-state defendant did not advertise in Michigan, had no "program" for seeking out prospective buyers in Michigan, and the purchase negotiations only ripened into a binding contract when the defendant executed the agreement outside of Michigan. *Id*. citing *Hanson v. Denckla*, *supra*, at 357 U.S. at 251-52, for the proposition that, although not determinative, "the place where the contractual obligation was incurred is a factor that the courts often deem important" in determining the exercise of personal jurisdiction.

The court in *LAK Inc.* also explained that although the plaintiff's agent in that action, "may have found it convenient to conduct some of the negotiations at long distance from Michigan is not of controlling significance" and that the "telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends" struck the court as "precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *LAK, Inc., supra* at 1300-01. To do so would **be to render the defendant "open to liability 'in every state of the union whenever (he made) telephone calls or wrote letters to a customer who (might subsequently claim) that they constitute[d] misrepresentations**.'" *Id*. at 1301 (emphasis added).

Here, there were no "positive acts of misrepresentations" actually taking place in Ohio sufficient to warrant the exercise of personal jurisdiction. *See id.* at 1304 citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1217-18 (6th Cir. 1989) ) (where such "positive acts" included not only telephone calls "but also on an allegation that the defendant actually travelled to Michigan to solicit their business, and actually made fraudulent representations while in Michigan."). At best, Defendants can only be said to have responded to Nationwide's request for information or documents in support of an application for an insurance policy and were sending

documents to Ohio and/or otherwise communicating with Nationwide there simply because Nationwide happened to reside there, not because they were trying to exploit Ohio business to market Defendants' products or services. In any event, jurisdiction is inappropriate under those circumstances. *See Calphalon, supra*, 228 F.3d at 722-23 citing *International Technologies Consultants v. Euroglas*, 107 F.3d 386, 395 (6th Cir.1997) ("we found it 'purely fortuitous' that the foreign defendant-seller had any contact with Michigan. The defendant was not attempting to 'exploit any market for its products' in the state of Michigan, but rather had contact with the state only because the plaintiff chose to reside there.").

### 2. Because Plaintiff has Not Established the Purposeful Availment Prong under *Southern Machine*, Plaintiff Cannot Establish the Remaining Prongs.

The failure to establish any of the prongs under the *Southern Machine* text is fatal to the exercise of personal jurisdiction. *See Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 983 (6th Cir. 1992) (a "failure of proof at any step in the analysis requires a finding that there is no personal jurisdiction."). Because Plaintiff has not met the purposeful availment prong, it is improper to exercise personal jurisdiction over the Defendants. Specifically, the contacts set forth in this action are far too attenuated for Plaintiff to establish that its claims "arise from" these attenuated contacts or that it is "reasonable" for Defendants to expect to be haled into defending a lawsuit in Ohio.

Adopting Plaintiff's position here would render every insured subject to suit by its out-of-state insurer on the basis of sending applications for insurance, correspondence with insurer, and premium payments to insurer's out-of-state address. Defendants here had no role in negotiating the insurance policy, did not dictate contract terms, or otherwise depart from their "passive buyer role." They merely acted in accordance with the procedures required and established by

17

Nationwide. Defendants here are in decidedly different positions from defendants against whom personal jurisdiction were applied.

Accordingly, the exercise of personal jurisdiction is not warranted and this matter must be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## IV.  VENUE IS IMPROPER IN OHIO WHEN THE SUBSTANTIAL PART OF THE EVENTS TOOK PLACE IN CALIFORNIA AND A MAJORITY OF THE DEFENDANTS RESIDE THERE

As established in the moving papers, none of the Defendants reside in Ohio. Accordingly, the only basis for establishing proper venue in Ohio is if a "substantial part of the events or omissions giving rise to the claim occurred there." *See* 28 U.S.C. §1391. Contrary to the Plaintiff's allegations, the *substantial* part of the events occurred in California, *not* Ohio. All that the Defendants did was send completed Nationwide forms (provided to them in California) and documents/information requested by Nationwide from them. Nationwide, to the contrary, engaged in considerable activities in soliciting sales of its insurance policies in California. The documents were all executed in California. The policy, which was a California insurance policy, was issued in California, and the death benefits were payable in California. The only connection with Ohio is the fact that Nationwide happens to reside there.

Again, if the Court were to adopt Nationwide's arguments, this would subject all insureds or anyone having anything to do with submitting documents on behalf of an insurance application to suit in Ohio.

## V.  CALIFORNIA, NOT OHIO, IS THE MORE CONVENIENT FORUM FOR TRIAL OF THIS MATTER

Deference to the Plaintiff's choice of forum is inappropriate where, as here, the trial in the chosen forum state would be oppressive or vexatious to the defendant and "out of all proportion to a plaintiff's convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)

18

(quoting *Koster v. Lumbermen's Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

### A. California Is More Than Acceptable As An Alternative Forum For Nationwide To Pursue Its Claims.

It is well established that, "[f]or the convenience of parties and witnesses, in the interest

of justice, a district court may transfer any civil action to any other district or division where it

might have been brought." 28 U.S.C. § 1404(a). Here, there is no question that Plaintiff could

have filed this lawsuit in California. There is no question that Defendants are amenable to service

there, nor is there any indication that the remedy afforded by the California courts would be

unsatisfactory, especially in light of California's well-developed insurance laws and regulations.

### B. Nationwide's Choice Of Forum Should Be Afforded *Less Deference* Since The Operative Facts Giving Rise To Its Claims Occurred In California.

"[W]here operative facts giving rise to the action occur outside of the forum, the

deference given to (the) plaintiff's choice of forum is somewhat reduced." *Hardy v. Fernandez*,

No. 09-1230, 2009 WL 2518211 at *2 (E.D. Pa. 2009) (quotation omitted) (alteration added); *see

also Mead Corporation*, 508 F.Supp. at 198 (noting that there is less deference to the plaintiff's

choice of forum "where none of the conduct complained of occurred in the forum selected by the

plaintiff.").

As established *supra* and in the Moving Papers, the operative facts that gave rise to

Plaintiff's claims occurred outside of this district. Defendants are California residents (*See*

Golden Decl., ¶2; Railey Decl., ¶2; Keller Decl., ¶2), Defendant Leonardo Aguiar was a

California resident at the time the policy was issued (*See* Aguiar Decl. at ¶¶6-7), and the policy

was issued to a California resident with a California beneficiary. (*See* Golden Decl., ¶¶5-6.)

Accordingly, this Court should give *less deference* to Nationwide's choice of forum when

analyzing the private and public interest factors that strongly favor dismissal or transfer.

19

**C.**     <u>The Private Interest Factors All Weigh In Favor Of Dismissal Or Transfer.</u>

The private interests that must be weighed when considering whether to transfer an action are "the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; and other practical problems that make trial of the case easy, expeditious and inexpensive." *Jamhour v. Scottsdale Insurance Co.*, 211 F.Supp.2d 941, 945 (S.D. Ohio 2002) (citation omitted).

Here, the relevant private interest factors weigh heavily in favor of dismissal or transfer to California. All of the Defendants are either residents of California or were residents at the time of the alleged improper actions which only occurred in California. Moreover, the ease of access to sources of proof (all located in California—such as witnesses or other documents) are all located in California. Furthermore, any non-party witnesses will be located in California. Indeed, Plaintiff's own Complaint reveals that a key witness will likely be the insured's son, Paul Barry in California. (*See also,* Aguiar Decl. at ¶7.) Subjecting Mr. Barry or any other California witness to travel to Ohio for this case simply because the insured chose Nationwide as the California insurer will be decidedly unfair and would render it more difficult to compel the attendance of non-party witnesses to appear in Ohio for deposition and/or trial.

It will be difficult, time-consuming, and extremely expensive to litigate this matter in Ohio. In addition to the non-party witnesses, all of the defendants will have to travel to the Southern District of Ohio. This will lead to increased costs and expenses that are unnecessary for a case that has only the most tenuous of connections to this district, especially in light of the fact that the Plaintiff litigates and actively conducts and solicits business in California.

Because the actions allegedly giving rise to Nationwide's claims took place in California, and the vast majority of the witnesses are located California, it makes sense to transfer the case there. Any purported convenience to Nationwide should not outweigh the numerous factors that justify a transfer. Moreover, as demonstrated *infra*, California law governs the substantial issues in the case and a California court will be more familiar with application of controlling California law.

**D.     The Public Interest Factors All Weigh In Favor Of Dismissal Or Transfer.**

Similarly, the public interest factors in this instance weigh in favor of dismissing or transferring the action. Such public interest factors include, "docket congestion; the burden of trial to a jurisdiction with no relation to the cause of the action; the value of holding trial in a community where the public affected live; the familiarity of the court with controlling law; judicial economy; and the avoidance of inconsistent judgments." *Jamhour*, 211 F.Supp.2d at 945-46.

Here, the public interest factors weigh heavily in favor of dismissing or transferring to California which has a strong interest in deciding cases involving insurance policies sold in California to a California resident. Here, the purportedly wrongful conduct occurred in California and California has adopted its own highly-regulated insurance laws, including those related to viatical settlements. As previously set forth, Nationwide is already subject to regulation and licensing requirements in California and Nationwide "reached out" to California residents to sell its insurance policies. Accordingly, California has the greater interest.

As previously stated, the *only* connection between this case and the Southern District of Ohio is that Nationwide resides here. However, this factor alone is fatally insufficient to justify keeping this case in Ohio especially in light of the numerous other factors which weigh in favor

of dismissal or transfer, including the fact that California law applies to the alleged wrongful

acts. On this basis and in light of the compelling factors demonstrating the substantial

inconvenience in litigating this matter in Ohio, this Court should order this matter dismissed or

transferred to California. *See e.g.*, *Mead Corporation v. Oscar J. Boldt Construction Company*,

508 F.Supp. 193, 197 (S.D. Ohio 1981) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32

(1955). ("Because transfer is a lesser sanction than dismissal, a transfer can be granted upon a

"lesser showing of inconvenience" than what is normally required for a dismissal.").

## VI.  OHIO STRONGLY ENFORCES CHOICE-OF-LAW PROVISIONS IN AGREEMENTS PURSUANT TO THE RESTATEMENT (SECOND) § 187

It is undisputed that Nationwide drafted the subject insurance policy, issued it in

California to a California resident to be performed in California, and elected to include a choice-

of-law provision selecting California law to govern the rights and obligations of the parties to the

insurance contract. Nevertheless, Nationwide now proposes to jettison this provision. In an

effort to avoid California's well established repudiation of Nationwide's purported lack of

insurable interest defense.

As a threshold matter, the parties do agree that this Court looks to Ohio's choice of law

jurisprudence in determining which law controls. See *Klaxon Co. v. Stentor Electric Mfg. Co.*,

313 U.S. 487, 61 S.Ct 1020 (1941). The parties further agree that the Ohio Supreme Court has

adopted the Restatement (Second) Conflict of Laws. Section 187 of the Restatement applies to

contracts which contain a choice-of-law provision and, consistent with that Section, "Ohio

choice-of-law principles strongly favor upholding the chosen law of the contracting parties,"

which in this case is California. *Ranpak Corp v. Lopez*, No. 1:08CV0042, 2008 WL3822129, at

*6 (N.D. Ohio, August 12, 2008) (citing *Tele-Save Merchandising Co. v. Consumers*

*Distributing Co. Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987).)[1]  When, as here, the parties have

specified their choice of law, the Restatement provides:

> "The law of the state chosen by the parties to govern their
> contractual rights and duties will be applied, even if the particular
> issue is one which the parties could not have resolved by an
> explicit provision in their agreement directed to that issue...."

In *Tele-Save Merchandising Co. v. Consumers Distributing Co., Ltd.*, *supra*, plaintiff

Tele-Save and Consumers Distributing Co. ("CDC") entered into a sales agreement that

expressly specified that it would be governed by New Jersey law.  Tele-Save filed an action in

Ohio against CDC alleging violation of Ohio's Business Opportunity Plans Act, which regulates

business opportunity plans and sales and provides for certain "rights and remedies" for Ohio

purchasers who are "defrauded by dishonest or negligent sellers." *Tele-Save*, *supra*, 814 F.2d at

1122.  CDC thereafter filed a motion for summary judgment, stating that it could not be subject

to the Ohio Act due to the fact that the parties had stipulated that the contract would be governed

by New Jersey law.  Tele-Save, conversely, defended on its claim that the choice-of-law

provision agreed to by and between the parties violated "a fundamental public policy of Ohio."

*Id.*  In ruling against Tele-Save and determining that New Jersey, not Ohio law, applied, the

court affirmed Ohio's deference to the Restatement (Second) § 187 stating:

> "[R]ecent comments by the Ohio Supreme Court indicate that Ohio
> choice of law principles strongly favor upholding the chosen law
> of the contracting parties.  We see no reason to disturb the parties'
> choice absent the application of another state's law that would be
> concededly repugnant to Ohio public policy." *Tele-Save*, *supra*, at
> 1122.

Similarly in this case, Nationwide has attempted to argue that an Ohio United States

District Court, sitting in diversity and applying the choice of law of Ohio, should ignore the

_____

[1]California takes the identical position as Ohio, enforcing choice-of-law provisions and
adopting the principles set forth in the Restatement (Second) Conflict of Laws.  See, *Nedloyd
Lines B.V. v. Superior Court*, 3 Cal.4th 459, 465 (1992).

choice-of-law provision set forth in the Nationwide policy and subject California residents to the

Ohio viatical statutes under Ohio law. This case is even more compelling than the *Tele-Save*

case because in that case the Court noted, "we have a freely negotiated contract between parties

of relatively equal bargaining strength." *Tele-Save*, *supra*, 814 F.2d at 1124. Here, we are faced

with a consumer insurance contract issued by an Ohio company with a substantial presence in

the California insurance market drafted solely by Nationwide, a national insurance company with

thousands of agents in California. Nationwide's insurance policy can also be fairly characterized

as procedurally adhesive since it is provided on a take-it-or-leave-it basis to California residents.

*See Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 809 N.E.2d 1161 (Ohio App. 2004).

Thus, for Nationwide to attempt to disavow its own adhesive policy to apply the Ohio law to

California residents is contrary to the Restatement (Second) as adopted by the Ohio Supreme

Court.

Further, Nationwide's attempt to narrowly circumscribe its choice-of-law provision to

only apply to strictly contractually-based claims is without basis. The *Tele-Save* case did not

entail contractual claims, but involved alleged statutory violations as well as allegations of fraud

and negligence.

**A. The Ohio Supreme Court Would Unequivocally Enforce Nationwide's California Choice-of-Law Election.**

The Ohio Supreme Court's policy of honoring choice-of-law provisions is articulated in

the seminal case of *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Company*, 6

Ohio St.3d 436, 453 N.E.2d 683 (Ohio 1983). *Schulke Radio* involved a choice-of-law dispute

relating to an action brought by Schulke, the producer of musical tapes, against broadcaster

Midwestern Broadcasting, who had originally agreed to purchase the tapes for a four-year

period. The contract provided "that all matters between the parties were to be settled in

24

accordance with New York law." *Id.* at 485. The defendant ultimately switched its format,

stopped using the tapes provided by defendant Midwestern, and ceased making payments under

its contract. *Id.* Plaintiff Schulke filed an action for breach of contract. On appeal, the Court of

Appeals found that New York law applied to the dispute as stipulated by the parties in the

contract . The matter was appealed to the Ohio Supreme Court, which agreed with the appellate

court, noting as follows:

> "In the instant matter, however, we are confronted with a question
> which we have not heretofore addressed, i.e., where the parties
> have specifically designated a forum other than the place of
> performance, should that decision be respected? The court below
> held and we agree that under these circumstances the correct rule
> to apply is the one set forth in the Restatement of Law Second
> (1971) 561, Conflict of Laws, § 187...."

Here, of course, the "place of performance" is California, making application of California more

compelling.

Two years later, the Ohio Supreme Court reaffirmed its reasoning in the case of *Jarvis v.*

*Ashland Oil, Inc.*, 17 Ohio St.3d 189, 478 N.E.2d 786 (Ohio 1985), by applying Kentucky law to

an Ohio case, stating that, "where the parties to a contract have made an effective choice of the

forum law to be applied, the Restatement of the Law Second, Conflict of Laws (1971), 561, §

187(2), will not be applied to contravene the choice of the parties as to the applicable law." The

Court noted that it is "fundamental to our commercial intercourse that parties have the right to

contract freely with full expectation that their bargain will be permitted to endure according to

the terms agreed upon. Any rule of law which would sanction the renunciation of an otherwise

valid, voluntary agreement would lead to instability in all of our personal and business

contractual relationships and assure multifarious litigation." *Jarvis, supra*, 17 Ohio St.3d at 190.

**B.** **Neither Exception to the Restatement § 187 Applies to the Choice-of-Law Analysis Here Under the Ohio Supreme Court Choice-of-Law Analysis.**

As set forth in Defendants' Motion, the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless:

> "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> "(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and ... would be the state of the applicable law in the absence of an effective choice of law by the parties."

With respect to subsection (a), clearly there are substantial relationships with the contracting parties and the State of California. FJ Smith, Inc. is a California corporation; the insured resided in California; and Nationwide issued its policy in the State of California to be performed in California under special California guidelines and pursuant to California insurance law requirements. In the case of Golden and Railey, each of these individuals are residents of California; are employed and licensed in California; and conduct all their personal and professional activities in California. Clearly, it is not possible to assert that there is "no substantial relationship" to the parties to the State of California.

With respect to subsection (b), there is no, nor can there be, any evidence provided that Ohio has a materially greater interest than California in the determination of the issues raised, or that applying California law would be contrary to any fundamental policy of Ohio. To the contrary, California is an extremely and highly regulated market and has a substantial interest in the regulation of insurance issued to its citizens. Pursuant to California *Insurance Code* section 10112.5(a)(1):

> "Notwithstanding any other provision of law, every policy or certificate of health insurance marketed, issued or delivered to a

26

resident of this state, regardless of the situs of the contract … shall be subject to all provisions of (the California Insurance) Code."

Moreover, the Ohio Supreme Court has interpreted this provision narrowly, asserting that only "where the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of (Ohio), (will) the law of Ohio … be applied when it can be shown that (Ohio) has a materially greater interest than the chosen state in the determination of the particular issue." *Schulke Radio*, *supra*, 6 Ohio St.3d at 438-39.

Thus, Ohio has modified the application of subsection (b) by requiring not only that California law be repugnant, but also that Ohio has a greater interest than California in regulating the issuance of policies in its own state. In fact, the Ohio Supreme Court is deferential to choice-of-law provisions even when admittedly the choice of a foreign jurisdiction is deemed to be repugnant to Ohio law. See *Jarvis*, *supra*, 17 Ohio St.3d at 789 ("we further hold that where the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of this state, the law of Ohio will <u>only</u> be applied when it can be shown that this state has a materially greater interest than the chosen state in the determination of the particular issue.") Emphasis added. Here, there cannot be any such showing based upon such a high barrier established by the Ohio Supreme Court in its interpretation of the Restatement and the strong interest California holds in regulating insurance issued in its own state to its citizens. Finally, and as will be shown, Ohio law would not apply even in the absence of a California choice-of-law provision and, as such, under the final prong of the Restatement (Second) § 187(b), it is clear that the choice of law selected by the contracting parties must be applied to this dispute and neither of the exceptions under the Restatement could conceivably be found to apply.

## VII. SECTION 188 OF THE RESTATEMENT (SECOND) ONLY APPLIES WHEN NO CHOICE OF LAW HAS BEEN DESIGNATED

While Nationwide's Opposition does refer to the Restatement, it is notably silent on what

27

the Restatement and the Ohio Supreme Court have said regarding the enforcement of choice-of-law provisions in a contract pursuant to § 187. Instead, Nationwide cites only Ohio law under the Restatement as it applies when no choice-of-law provision has been inserted in a contract pursuant to § 188, stating in that circumstance that, "The Restatement generally directs courts to apply the substantive law of the state with the most sufficient contacts to the claim." See Plaintiff's Opposition, p. 36. However, it is only where a choice of law is not designated that under Ohio law, § 188 of the Restatement (Second) Conflict of Laws controls and instructs that the rights and duties of the parties to the contract are to be determined by the law of the state that has "the most significant relationship to the transaction and the parties." In its choice of law analysis, Nationwide ignores § 187 of the Restatement entirely and proceeds to apply § 188 as if there was no choice of law made by the parties to the insurance agreement. Nationwide then jumps to a Restatement § 188 analysis, reasserting its paper thin claim of alleged substantial contacts in the State of Ohio. See Plaintiff's Opposition, pp. 36-37. However, § 188 of the Restatement does not come into play when there is a choice of law chosen by the parties. In that event, § 187 applies and the law of the state chosen by the parties to the contract will govern their contractual rights and duties.

## VIII. EVEN WHERE NO CHOICE OF LAW HAS BEEN DESIGNATED, OHIO LAW MANDATES THAT CALIFORNIA LAW BE APPLIED UNDER THESES FACTS

Assuming, *arguendo*, that the choice-of-law provision did not exist or, as Nationwide argues, said provision does not include its tort-related claims, and a § 188 Restatement analysis is applied, the result is still the same under Ohio law. Specifically, even if there was no choice of law set forth in the policy, Nationwide's assertion that Ohio has "the most significant relationship to the transaction" is not consistent with Ohio law concerning insurance contracts in its application of the Restatement § 188. *See Gries Sports Ent., Inc. v. Modell*, 15 Ohio St.3d

284, 473 N.E.2d 807 (Ohio 1984).

Section 188 of the Restatement (Second) states as follows:

> **"In the absence of an effective choice of law by the parties** ...,
> the contacts to be taken into account ... to determine the law
> applicable to an issue include:
>
> "(a) the place of the contracting;
>
> "(b) the place of negotiations of the contract;
>
> "(c) the place of performance;
>
> "(d) the location of the subject matter of the contract; and
>
> "(e) the domicile, residence, nationality, place of incorporation and
> place of business of the parties ...." (Emphasis added.)

In insurance cases under Ohio law, an analysis pursuant to § 188 of the Restatement will correspond with the Restatement's view that the rights created by an insurance contract should be determined "by the law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties." *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St. 3d 474, 479, 747 N.E.2d 206 (Ohio 2001) (citing Restatement at 15, § 6, Comment g, and Restatement at 610, § 193). Accordingly, under Ohio law, "the principal location of the insured risk during the term of the policy," in this case California, is the critical determining factor as to which law applies in the absence of a choice-of-law provision for tort-related claims. If, for example, an auto policy is under consideration, the focus is where the auto or autos were garaged during the relevant time period. *Id.* .In a circumstance where a court is dealing with a non-auto policy, courts will apply the law of the state where the policy was issued. Courts do this because the state where the policy was actually issued, e.g., sent to the insured, generally corresponds to the place of contracting, negotiation,

performance, and the location of the subject matter, e.g., the insured's covered activities, as well

as the place of business for at least one of the contracting parties – the insured. *See* Restatement

(Second) of Conflict of Law, § 188(2)(a) and (d); *General Accident Insurance Co. v. Insurance*

*Co. of North America*, 69 Ohio App.3d 52, 59-60, 590 N.E.2d 33 (Ohio App. 1990).

### A. The Ohio Supreme Court Has Already Determined That the Law of the State of Issuance Governs Insurance Policies in The Absence Of Choice Of Law

In applying these principles to an insurance policy issued by Nationwide to a resident in

Florida, the Ohio Supreme Court determined that the law of the state of issuance, Florida, not

Ohio where Nationwide brought the case, would govern. *Nationwide Mutual Ins. Co. v. Ferrin*,

21 Ohio St.3d 43, 487 N.E.2d 568 (Ohio 1986). In determining that the law of Florida as

opposed to the law in Ohio would apply, the court summarized its findings based upon the

Restatement section cited *supra* as follows:

> "Insofar as the insurance contract herein was delivered to Joule's
> headquarters in Clearwater, Florida; that the address of Joule on
> the policy was Joule's Florida address; and that Ferrin was
> employed by Joule in Florida and left Florida to deliver the yacht
> to Michigan, more than ample basis was provided by the evidence
> to sustain the trial court's determination that Florida law was the
> applicable law. We therefore are compelled to affirm the
> determination that Florida law is applicable to the insurance
> contract." *Id*. at 570.

*Nationwide v. Ferrin* is the definitive statement by the Ohio Supreme Court as to how it

will interpret the application of choice-of-law principles to insurance contracts when there is no

"effective choice of law by the parties" pursuant to Restatement § 188. *Ferrin* was the case

largely relied upon by the court in *Ohayon*. *Ohayon, supra*, 91 Ohio St.3d at 478-79. Although

in the instant case Nationwide repeatedly states that it issued its policy by mailing it from Ohio;

that premium payments were sent to Ohio; that the application was sent there; and that Ohio was

affected by the matters alleged in the subject complaint, this analysis completely ignores the fact

that in determining the choice of law when no election has been made or as to any matter falling

outside of the choice-of-law provision, Ohio has chosen to focus upon the fact that the policy

was issued in California to a California resident; delivered in the State of California; involved a

trust created in California; and was to be performed there. These are the deciding factors

pursuant to the Ohio Supreme Court decisions in *Ohayon* and *Nationwide v. Ferrin*.

## IX. NATIONWIDE'S ATTEMPT TO STRIP THE POLICY OF ITS CHOICE-OF-LAW PROVISION BASED UPON FRAUD BEGS THE CHOICE-OF-LAW ISSUE

As an introduction to its choice of law analysis, Nationwide states that it has "pled facts

that, if true, establish that the policy is void from inception and, thus, no insurance contract came

into existence." Nationwide therefore argues that it follows that since there is no insurance

policy to begin with, none of its provisions, including the choice-of-law provision, exists. *See*

Plaintiff's Opposition, p. 34. Setting aside that Nationwide has provided no case authority

whatsoever in support of this faulty syllogism, the argument begs the essential question: What

law is to be utilized to determine whether the Nationwide policy is in fact void from inception in

the first place? According to the policy and pursuant to Ohio Law, it is California law regardless

of whether the choice-of-law provision is considered.

Under California law, Nationwide's claim of fraud is untimely because of the

incontestability provision. Nevertheless, in a classic chicken before the egg scenario,

Nationwide proposes that the policy be deemed void simply because it is pled that the policy is

void. Nationwide wrongfully claims this Court is required to agree since to rule otherwise

"means the court must accept as false the factual allegation in the complaint." However, the

allegation that the policy is void *ab initio* is a legal conclusion, not a "fact." While this Court

must accept all properly pled facts as true, it must disregard conclusions of law. *Ashcroft v.

Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); *Fed. R. Civ. Proc.* 8. Thus, Nationwide's

31

argument is nonsensical. Perhaps more importantly, Nationwide cannot cite a single case where

such a determination is made before a choice of law has been selected in the interpretation of an

insurance policy.

**X.**      **PLAINTIFF'S FRAUD CLAIMS ARE GOVERNED BY THE CONTRACTUAL INCONTESTABILITY PROVISION AND THEREFORE ARE, OF NECESSITY, RELATED TO THE CONTRACT AND SUBJECT TO THE CHOICE-OF-LAW PROVISION**

As a final attempt to repudiate its own choice-of-law election in its insurance policy,

Nationwide postulates that none of its tort-related claims for fraud may be subject to the choice-

of-law provision since said provision was not intended to apply to claims not strictly related to

the contract. As a threshold matter, any ambiguity in an insurance contract is to be construed

against the party drafting the policy. *Victoria v. Superior Court*, 67 Cal.App.4th 779, 800

(Cal.App. 1998); see also *Lawrence v. Walzer & Gabrielson*, 207 Cal.App.3d 1501, 1506-1507

(Cal.App. 1989). Thus, if there is any ambiguity as to whether the choice-of-law provision also

encompasses tort claims, said ambiguity will be interpreted in favor of the insured, e.g. finding a

broader scope, including tort claims, and against Nationwide, which seeks more favorable Ohio

law under Ohio's recently-enacted viatical statutes.

More critically, however, because Nationwide's tort-related allegations are governed by

the incontestability clause, a purely contractual provision set forth in the policy, the issue is moot

in any event since under this contract provision and California statutory law, claims of fraud are

untimely and are barred by the incontestability provision which constitutes a two-year statute of

repose. *See* Section XIV, subsection A, *infra*, at p. 39-40, and Defendants' moving papers at pp.

25-26. Thus, it is of no consequence whether Nationwide's claims of misrepresentation fall

outside the purview of the choice-of-law provision since those claims are barred *under the*

*contract*, which Nationwide concedes is encompassed by the choice-of-law provision it drafted.

### A. The Choice-Of-Law Provision Encompasses Tort Actions.

Nationwide's attempt to dichotomize the choice-of-law provision between tort and contract is also not supported under California law under these facts. Specifically, the seminal California Supreme Court case of *Nedloyd B. V. v. Superior Court*, 3 Cal.4th 459, 466 (Cal. 1992), held that the term "governed by" is a broad one, signifying a relationship of absolute direction control and restraint sufficient to encompass tort as well as contract claims. The provision in the Nationwide policy utilized the key term "govern" in its own choice-of-law language.

Additionally, Nationwide is alleging tort claims for the specific purpose of disavowing the contract. Where a claim is stated as a tort but is really a challenge to a contract, the Sixth Circuit has held that the tort claim falls within the ambit of the choice-of-law provision even if the provision is a narrow one. *Moses v. Business Card Express, Inc.*, 929 F.2d 1131 (6th Cir. 1991). In *Moses*, plaintiffs sought to avoid enforcement of a contract on a fraud theory and claimed that a choice-of-law provision, stating, "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the State of Michigan," applied only to construction of the contract itself and not to the fraud claim. The court disagreed and found the dispute to be within the scope of the clause, stating:

> "The plaintiffs are not asserting a non-contractual claim or one that arose incidentally out of the contractual relationship. Rather, they are seeking to avoid enforcement of the contract itself. They put the validity of the contract in issue, and such a claim would appear to be encompassed by the language...."

Such is precisely the case herein. Nationwide seeks to invalidate the contract itself based upon its assertion of fraud. Like *Moses*, the claim of fraud is not incidental to the contract but is the means by which Nationwide seeks to "avoid enforcement of the contract itself." *See also Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392-1393 (8th Cir.

1997) (even a narrow choice-of-law provision, providing that the contract "shall be deemed governed by and implemented in accordance with the laws of" a particular state "can govern tort claims arising out of the parties' performance under the contract or closely related to the interpretation of the contract, including claims of fraud in the inducement or misrepresentation."). Nationwide attempts to distinguish *Moses* simply by stating that it identified more limiting provisions not before it by citing *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990). However, the mere fact that the *Moses* court recognized that certain choice-of-law provisions could be limited to contract claims only does not serve to distinguish *Moses* from its application under these facts.

## XI. NATIONWIDE'S ALLEGATION THAT THE BARRY POLICY LACKED AN INSURABLE INTEREST IS DIRECTLY CONTRARY TO BLACK LETTER CALIFORNIA LAW

Beginning on page 37 of its Opposition, Nationwide argues that under California law the Barry policy lacks an insurable interest for the following reasons: 1) the original beneficiary of the policy was a trust; 2) despite the fact that the beneficiary of the trust was a blood relative of the insured, the intent of using a trust was to conceal the absence of an insurable interest in the policy; and 3) California law obligates courts to look behind the trust transaction to ensure the policy is not a wagering contract.

To begin with, the use of a trust to hold a life insurance policy does not vitiate the insurable interest requirement in California. In the case of *Lincoln National Life Insurance Co. v. Fishman*, 638 F.Supp.2d 1170, 1175 (C.D. CA 2009), the court noted as follows:

> "Trusts are a common estate planning tool used to hold life insurance policies so that, after an insured passes away, the policy proceeds may be used to pay for his or her estate taxes."

The court went on to state:

> "It is well established that an irrevocable trust, such as the one in

this case, may purchase and hold life insurance policies on the life of its settler. Moreover, Dr. Fishman's sons, who were the ultimate beneficiaries of the trust, also have an insurable interest in their father's life as, again, California defines relation 'by blood' as rendering it an insurable interest. Thus, simply looking at the form in which this transaction took place … Dr. Fishman, his sons, and the trust had an insurable interest in Dr. Fishman's life at the time the policy took effect." *Id.* at 1177.

Similarly here, Nationwide admits in paragraph 26 of its Opposition that the policy was issued to the Edward Barry Insurance Trust. It is also not disputed that the beneficiary of the trust was Edward Barry's son, Paul Barry, at the time the policy was issued. *See* Golden Dec., ¶ 5 (asserting this undisputed fact). Consequently, the use of a trust to hold insurance is not violative of the insurable interest laws in California and Paul Barry, a blood relative, possessed an insurable interest in his father's life. Moreover, California law is clear that subsequent to the issuance of the policy the interest therein may be transferred to one not having an insurable interest. *California Insurance Code* § 286. This Section "was designedly adopted to set at rest any question as to the assignability of a life insurance policy and also to affirm the right to make such an assignment to a person having no insurable interest in the life of the insured. *Lewis v. Reed*, 48 Cal.App. 742, 746 (Cal.App.1920).

Thus, the only issue presented is whether under California law the court is permitted to make a factual inquiry to look behind the form of what facially constitutes an insurable interest based upon the alleged motivation of the parties. Clearly, as of July 10, 2009, well after the Barry trust was created (October 3, 2008 – Plaintiff's Complaint, ¶ 26) and the policy was issued (June 22, 2009 – Plaintiff's Complaint, ¶ 48), there was no governing law in California which allowed a court to look behind the form of the transaction and essentially reform it as Nationwide proposes based upon alleged intentions to subsequently transfer the policy. This legal reality was pointed out in the *Lincoln v. Fishman* case when Lincoln made the identical argument as

35

Nationwide does here, that the court should deem the creation of a trust and the subsequent

transfer of the interest in the trust as part of a STOLI scheme and a sham. In response to that

allegation, the California U.S. District Court interpreting California law responded as follows:

> "That is all well and good, but the statutory provision cited by
> Lincoln concerns efforts to procure policies without an insurable
> interest at the inception, which only brings the issue back full
> circle to the evidence presented by defendants that such an interest
> is and was fulfilled at the outset (even if in, Lincoln's view, as an
> obvious placeholder). Despite its valiant attempts to expose
> MCC's alleged scheme for the true 'charade' it is, the simple fact
> remains that the law, as it is currently structured, allows for an
> arrangement as that concocted by MCC."

*Fishman, supra* 638 F.Supp.2d at 1178.

In other words, financial arrangements, which Nationwide sinisterly refers to as

"STOLI," were simply not illegal in California and "the law as it presently exists allows this type

of insurance arrangement to be valid." *Id.*, at 1179. The court also noted in a footnote that

California law did not provide the court any authority to look behind the transaction when it

stated, "The problem the court is confronted with is not simply the parties' characterization of

their agreements ... but the realities of how the transaction was structured to operate. What

Lincoln is truly asking for the court to do is ignore those realities and examine the intent of the

parties in entering into the agreement in the first instance." The court concluded that, "Dr.

Fishman's intent, and the intent of the trust to exercise its rights standing alone, are legally

irrelevant." *Id.*

Nationwide goes to great efforts in its Opposition to argue that *Fishman* was

distinguishable due to its facts, claiming on page 39 (Plaintiff's Opposition), "that there was no

issue about the legitimacy of the insurance trust there or that it had an insurable interest of the

life of the insured, Dr. Fishman." However, even a cursory review of the *Fishman* decision

belies that characterization. The court specifically noted the cynicism with which Lincoln

characterized the transaction and that Lincoln, as does Nationwide here, insist that the policy was a wagering contract. However, the court stated unequivocally that, under California law, it was not permitted to look behind the actual form of the transaction, even if Lincoln alleged it was a "charade."

The *Fishman* reasoning was also echoed in the very recent decision, now on appeal, on February 6, 2012 in *Hartford Life and Annuity Insurance Co. v. Doris Barnes Family 2008 Irrevocable Trust, et al.*, No. CV 10-7560, 2012 WL 688817 (C.D. Cal. Feb. 3, 2012), in which the United States District Court, Central District of California, granted summary judgment on behalf of the Doris Barnes Family Irrevocable Trust and against Hartford Life and Annuity Company on all of Hartford's claims, including the claim at issue here that the policy issued by Hartford was void for lack of an insurable interest and for allegations of fraud, fraudulent inducement, negligent misrepresentation, and conspiracy.

Hartford had sought a declaration that the policy was void for lack of an insurable interest because the insured, Doris Barnes, obtained the policy with the specific intent to sell it almost immediately. *Id.* at *4. Like the court in *Fishman*, the *Barnes* court rejected Hartford's claim that the insured's intent to sell the policy could be relevant to the issue as to whether there was an insurable interest at the time the policy was issued. The court affirmed that the naming of one with an insurable interest, regardless of ultimate intent, was the only relevant issue. Although the case is currently on appeal by the same law firm representing Nationwide in this case, the reasoning and the interpretation of California law by the *Barnes* court should be adopted, especially since it comports with *Fishman*, the only case on all fours that is published in California.

Nationwide attempts to distinguish *Barnes*, stating that the standard concerning an

insurable interest on summary judgment as was the case in *Barnes*, differs than here on a motion to dismiss. But this is patently incorrect. The issue as to whether an insurable interest exists under California law under these undisputed facts is a question of law for the court. As stated, there is no question that the insurance trust existed at the time the Barry policy was issued; that it named Edward Barry's son, Paul Barry, as the beneficiary at the time the policy was issued; and, as stated in *Fishman* and *Barnes*, under California law existing at the time the policy was issued, Nationwide's allegation that there was an immediate desire to sell the policy under a sinister STOLI arrangement is not relevant. Thus, there is no factual question that differs with respect to the within motion to dismiss as opposed to a summary judgment since the facts are undisputed and the law existing at the time the Barry policy was issued in California is clear.

Finally, as an additional attempt to distinguish *Barnes*, Nationwide argues that the case "effectively disregarded Section 252 of the *California Insurance Code* which strictly prohibits wagering on human life." However, Section 252 has never been applied to an alleged STOLI arrangement in California by any court and has never been held to allow courts to look behind a properly constructed trust with an insurable interest to determine the intent of the parties in forming the trust, and has never been used as a basis to vitiate the existence of an insurable interest based solely upon the intentions of the parties.

Such is also the case with Nationwide's final argument that, "the *Barnes* court disregarded the longstanding legal principle in California that insurance policies that are not acquired in good faith … are void and lack an insurable interest." This statement is not supported by any case law and is simply a general assertion by Nationwide, itself, which is inconsistent with the specific statutes regarding what constitutes an insurable interest in California and the cases actually addressing Nationwide's STOLI allegations.

## XII. THE *BERCK* CASE IS THE ONLY DECISION WHICH PREVIEWS HOW CALIFORNIA WOULD APPLY ITS OWN LAW TO THIS CASE AND AFFIRMED THE HOLDING IN *FISHMAN*

In interpreting California law, a Federal District Court sitting in diversity is "Erie-bound to apply the law as it believes the court would do under the circumstances presented." *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1089 (N.D.Cal. 2007). The District Court's task in this diversity action is to "approximate state law as closely as possible." *Ticknor v. Choice Hotels, Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). The only California state case to directly address the issues presented here is the California Fourth Appellate District's decision in *The Lincoln Life and Annuity Company of New York v. Jonathan Berck*, No. D056373, 2011 WL 1878855 (Cal. App. May 17, 2011) (review denied). Although this case was not published for purposes of California State Court, there is no prohibition citing it in Federal Court and the case was cited by the U.S. District Court and relied upon by the court in *Barnes*. *Barnes, supra* 2012 WL 688817, at *4-5. Moreover, the California Supreme Court chose not to review *Berck* in its order of August 31, 2011. *Berck, supra* 2011 WL 1878855, rev. denied.. More to the point, the *Berck* case is the only case that previews California's view of the issues presented herein and therefore provides guidance as to how a California court would apply its law to the facts in this case. According to the *Berck* court, California's position is unequivocal: "The law as it existed in the *Fishman* case applies in this case." *Id.* at *5.

In *Berck*, the California Court of Appeal rejected as a matter of law Lincoln's attempt to rescind $20 million life insurance policies, based upon Lincoln's claim that two life insurance policies lacked an insurable interest because they were procured by third parties for investment purposes. The case is on all fours with the within matter and expressly affirmed the holding in

*Fishman*. That court summarized its findings on pages 15-16 as follows:

> "Although the evidence shows the trust intended that LPC ultimately would acquire the beneficial interest in Jack's policies, that intent does not negate the fact that when the trust acquired the policies, they were supported by an insurable interest. Lincoln cites federal cases applying the law of other states for the propositions that an insurable interest is lacking when a prospective insured applies for a life insurance policy with the intent of the insured to sell the policy to a stranger investor (citations omitted). In response to similar citations to out-of-state authority in *Fishman*, the *Fishman* court correctly noted there was no California authority "allowing a court to basically look behind the terms and other formalities of an insurance agreement(s) and basically re-write it to reflect what was really going on between the various parties thereto insofar as determining the existence (or lack thereof) of an insurable interest to an insurance policy."

*Fishman, supra,* 638 F.Supp.2d at. 1178-1179, fn. omitted.

The court concluded by reaffirming California's law, as it applied in *Berck*, and as it applies to this case:

> "As noted, an insurable interest must exist when an insurance policy takes effect, *but need not exist when the loss occurs (§§ 286,* 10110.1, subd. (f)), and a life insurance policy may be transferred by assignment to a person having no insurable interest in the life of the insured (§ 10130). Because the policies in question here were supported by an insurable interest when they took effect and California law allowed the beneficial interest in the policies to be transferred to a transferee without an insurable interest, the trial court erred by ruling the policies are void *ab initio* because of the absence of an insurable interest."

*Berck, supra* 2011 WL 1878855, at *7,

In this holding, California has announced how it would apply California law to this case. This court should therefore adopt the reasoning in *Berck* in deciding this motion¹ based upon California law.

## XIII. CALIFORNIA'S RECENT AMENDMENTS TO *INSURANCE CODE* SECTION 11010.1 ARE NOT RETROACTIVE UNDER CALIFORNIA LAW

The California Legislature enacted amendments in 2009 potentially rendering unlawful certain investor arrangements or viatical agreements, which Nationwide implies are somehow harmful or reprobate. Critically, however, the new legislation was expressly enacted to only be effective for policies issued on or after July 1, 2010. The Barry policy currently being challenged by Nationwide was issued in June 2009.

As noted by the *Berck* court, in 2009 the California Legislature passed an act that rendered certain insurance transactions similar to those in *Fishman* unlawful and invalid. *Berck, supra* 2011 WL 1878855, at *16. Specifically, California amended *Insurance Code* section 11010.1 to add two additional subsections which read as follows:

> "(d) Trusts and special purpose entities that are used to apply for and initiate the issuance of policies of insurance for investors, where one or more beneficiaries of those trusts or special purpose entities do not have an insurable interest in the life of the insured, violate the insurable interest laws and the prohibition against wagering on life.

> "(e) Any device, scheme, or artifice designed to give the appearance of an insurable interest where there is no legitimate insurable interest, violates the insurable interest laws." STATS. 2009, CH.343, § 1.

Critically, however, the *Berck* court notes that pursuant to Section 8 of the amending Act, it provided in relevant part that, **"This act shall not apply to any life settlement contract entered into before July 1, 2010."** *Berck, supra* 2011 WL 1878855, at, *8. Emphasis added.

The finding that the amendments to *Insurance Code* section 11010.1 are not retroactive is consistent with a long line of California authorities. Those authorities have held that statutes generally are prospective in their affect. *Goldman v. Standard Insurance Co.*, 341 F.3d 1023 (9th Cir. 2003).

41

Nationwide has confused the issue by repeatedly citing the current version of this statute without reference to its express prohibition against retroactive effect set forth specifically by the Legislature itself and pursuant to California law in interpreting its own statute.[2]

Thus, not only should the reasoning set forth in the *Berck* case be adopted, since it is the clearest expression of how California would likely adjudicate this matter, but its finding of non-retroactivity is also consistent with general California jurisprudence concerning the presumption against retroactivity which is expressly set forth in the amendments to *Insurance Code* section 10110.1. Accordingly, the *Berck* court concluded that, "The *Fishman* court correctly noted that there was no California authority 'allowing a court to basically look behind the terms and other formalities of an insurance agreement(s) and basically re-write it to reflect what was really going on between the various parties thereto insofar as determining the existence (or lack thereof) of an insurable interest to an insurance policy." *Berck, supra,* at *15 (citing *Fishman, supra,* 638 F.Supp.2d at 1178-79, fn. omitted. The court further determined that although the situation was changed effective July 2010, the revised law could not be applied in Berck, nor can it be applied herein.

A. **The *PHL Variable* Order Improperly Applies 2010 Amendments To The California *Insurance Code* Retroactively And Was Not Subject To Incontestability.**

In an effort to undermine *Fishman, Barnes,* and *Berck,* Nationwide cites the order in the pending matter of *PHL Variable Insurance Co. v. Howard Abrams,* No. 10CV521, 2012 WL 10686 (S.D. CA Jan. 3, 2012), which was an interlocutory decision by the federal district court for the Southern District of California denying a motion to dismiss. The *PHL Variable* case was similar to the *Fishman, Barnes,* and *Berck* cases in that insurance carrier PHL Variable attempted

---

[2] In fact, Nationwide never addresses retroactivity in its Opposition.

to have a $10 million life insurance policy insuring the life of Howard Abrams declared null and void, claiming that the policy lacked an insurable interest and was obtained by fraud. A key distinction, however, was that unlike this case and *Fishman, Barnes*, and *Berck*, the two-year incontestability provision for the PHL policy had not yet expired when challenged, thus allowing the carrier to rescind or void the policy based upon allegations of fraud regardless as to whether an insurable interest existed. Nationwide fails to mention this distinction, and also fails to address the retroactivity issue concerning the California Insurance Code relied upon by the court.

In *PHL Variable*, the insurance trust moved to dismiss the complaint by PHL Variable, stating that there was an insurable interest at the time the policy was issued and that the carrier had failed to challenge the fraud claims before the expiration of the incontestability provision. The District Court denied the motion to dismiss, stating that PHL Variable had filed its original complaint before the incontestability period expired. The court also erroneously held that PHL had "sufficiently alleged the existence of a STOLI scheme." However, in reaching its determination, the Southern District Court specifically relied upon the *amended* version of California *Insurance Code* section 10110.1(e), which, as stated hereinabove, only potentially bar investment arrangements for policies issued *after* July 1, 2010. Critically, the court never even addressed the issue as to whether *Insurance Code* section 10110.1(e), as amended, could properly be applied retroactively. In fact, there is no indication that the issue was even briefed by the parties. However, as set forth hereinabove, California law and the amendments to Section 10110.1 are clear that the revised version of the statute cannot be so applied and should not have been applied in the *PHL Variable* case since the policy in that case was issued on March 15, 2008, predating the amendment.

Nationwide ignores this fact in citing the *PHL Variable* case on pages 40 and 41 of its

Opposition, and also fails to mention that, unlike the case herein, PHL had filed suit before the expiration of the two-year incontestability clause, rendering its finding concerning a possible STOLI transaction virtually moot in any event since the fraud claims alone would prevent dismissal. In truth, California law is unequivocal in this regard and prohibits the retroactive application of the amendments to *Insurance Code* section 10110.1, subsections (d) and (e). Instead, because the Barry policy was issued prior to the July 2010 operative date of the amendments, the alleged investment plan, if even found to exist, was not violative of any law in California operative at the time the policy was issued.

Additionally, unlike the *PHL Variable* case, Nationwide's allegations of fraud in the inducement are untimely barred as a matter of law pursuant to the two-year incontestability provision.

## XIV. NATIONWIDE'S CIRCULAR ARGUMENT CONCERNING THE SURVIVAL OF ITS TORT CLAIMS IS LOGICALLY INCOHERENT

In the final section of its Opposition (pages 42-45), stripped to its barest terms, Nationwide argues: (1) even if there was an insurable interest at the time the Nationwide policy was issued, that fact does not prevent the assertion of what Nationwide alleges are viable tort-related claims; and (2) although there is an incontestability provision which would bar those tort claims, the provision cannot be applied since there was never an insurable interest in the policy. On its face this argument is logically incoherent since the initial premise of this syllogism depended upon the assumption that there *was* an insurable interest and is offered as an "even if" proposition. If this Court determines correctly that there was an insurable interest at the time the policy was issued, Nationwide's fraud-related claims are indeed a separate consideration. However, these claims are untimely because they were made after the expiration of the incontestability provision.

44

### A.  The Bar Of Incontestability In California Is Beyond Dispute.

Moreover, the applicability of the incontestability provision in California constitutes black letter law in that state and is beyond dispute. Specifically, for policy reasons, a decision was made long ago that even the most egregious acts of fraud will not vitiate a life insurance policy once that policy had been in effect during the life of the insured for over two years. The public policy is intended to "establish a limited period of time for insurers to investigate and discovery possible fraud by their insureds." *See United Fidelity Life Ins. Co. v. Emert*, 49 Cal.App.4th 491, 495 (Cal. App. 1996). Nationwide is not permitted to avoid the two-year incontestability period based upon its claims for fraud, fraudulent inducement, or negligent misrepresentation against the trust or its statutory claims. *See* 44 Am.Jur.2d, Insurance, § 778 ("insurance companies may not bring a tort suit for fraud after the contest period has run, where the fraud action would merely provide a different means to challenge the policy's validity."). Nationwide nevertheless argues without case authority on page 45 that, "California's incontestability statute does not … provide a bar to affirmative claims asserted by an insurer to recover damages as a result of being induced to issue a policy." However, California law is clear that when a policy contains an incontestability clause, the insurer may not relieve itself of the effect of such a clause by claiming that, since the insurance policy was obtained by fraud, all of it, including the incontestability clause, was invalid. *John Hancock Mutual Life Ins. Co. v. Markowitz*, 62 Cal.App.2d 388 (Cal.App. 1944).

It was decided long ago in California that beneficiaries under a life insurance policy have a right to expect that after the passing of two years when premiums are paid, policy proceeds will be paid upon the insured's death and the incontestability clause protects that expectation. *AMEX Life Ins. Co. v. Superior Court*, 14 Cal.4th 1231, 1236-1237 (Cal. 1997). In the *AMEX* case, the

insured had lied about the fact that he had contracted AIDS and later died of that disease after the expiration of the two-year incontestability period. AMEX Life Insurance Company attempted to void the policy based upon the misrepresentation. The California Supreme Court rejected the challenge, stating, "Incontestability clauses have been used by the insurance industry for over 100 years to encourage persons to purchase life insurance." *Id.* The court noted and reviewed a long line of cases which held that, "Even gross fraud by an insured who lied about his health in applying for life insurance falls within the terms of the incontestability provision." *Id* at 1268.

Thus, if this Court properly rules, consistent with California law, that the subject policy had an insurable interest at the time it was issued, Plaintiff's tort claims all must fail since they were made for the first time after the two-year incontestability period had expired.

## XV. **CONCLUSION**

Although Plaintiff's Opposition was well-crafted and cleverly phrased, a close inspection of the arguments made by Nationwide against dismissing this action do not pass muster. Clearly, the majority of the activities upon which Plaintiff bases its claims took place in California and no actions of significance occurred in Ohio. Accordingly, this action must be dismissed for lack of jurisdiction under Rule 12(b)(3) and for improper venue under Rule 12(b)(2), or alternatively transferred under 11 U.S.C. §§ 1404 and 1406 since all of the relevant factors weigh in favor of transfer.

Moreover, a thorough examination of the Plaintiff's arguments against dismissal based upon Rule 12(b)(6) reveals that whether analyzed pursuant to contract or tort choice of law principles, California law must be applied to resolve the dispute. Pursuant to California law, Nationwide's claim that the policy lacked an insurable interest based upon the parties' intent has already been rejected by California courts. Nationwide's tort claims based upon fraud are

46

similarly untimely.  Accordingly, Nationwide's claims must be dismissed.

*/s/ Sarah D. Morrison*
Sarah D. Morrison (0068035)   (Trial Attorney)
smorrison@taftlaw.com
Stephen C. Fitch (0022322)
sfitch@taftlaw.com
Taft Stettinius & Hollister, LLP
65 East State Street, Suite 1000
Columbus, Ohio  43215
Telephone:  (614) 221-2838
Fax:  (614) 221-2007

James Sherman Cooper
jcooper@laklawyers.com
Anne Claire Manalili
amanalili@laklawyers.com
Levinson Arshonsky & Kurtz, LLP
15303 Ventura Blvd., Suite 1650
Sherman Oaks, California 91403
Telephone:  (818) 382-3434
Fax:  (818) 382-3433

*Attorneys for Edmond Golden, FJ Smith, Inc.,
and Jeff Railey*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Motion to Dismiss Complaint* was served on all

counsel of record this 20th day of June, 2012, via the Court's electronic filing system.

*/s/ Sarah D. Morrison*
Sarah D. Morrison